Filed 10/17/24  P. v. Contreras CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B322950 |
| Plaintiff and Respondent, | Los Angeles County |
| | Super. Ct. No. |
| v. | MA010814-02 |
| EDWARD PHILLIP CONTRERAS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terrance T. Lewis, Judge.  Reversed and remanded with directions.

Caneel C. Fraser and Jennifer Hansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

Edward Phillip Contreras appeals from the trial court's order denying his petition for resentencing under Penal Code section 1172.6.[1]  The court denied Contreras's petition at the prima facie stage, finding him ineligible for relief as a matter of law based on the jury's true finding on the special circumstance of lying in wait.  We conclude the record of conviction—which includes an arguable ambiguity in the jury instructions—does not conclusively establish Contreras is ineligible for resentencing as a matter of law.  Accordingly, we remand the matter for the trial court to issue an order to show cause and conduct an evidentiary hearing.

## FACTS AND PROCEDURAL BACKGROUND

### 1.   *Fredrick Walker is killed and dismembered*[2]

In early August 1995, Fredrick Walker came into possession of more than $935.  In the late morning or early afternoon of August 9, 1995, Contreras, Scott Anthony Taylor, and Taylor's girlfriend Cinnamon Meyer met up at Taylor's home.  Contreras and Taylor were friends of Walker.  Contreras said he needed $400 to go to "contracting school" but he didn't have the money.  (*Contreras I*.)

---

[1]     References to statutes are to the Penal Code.  Effective June 30, 2022, former section 1170.95 was renumbered section 1172.6 with no change in text.  (Stats. 2022, ch. 58, § 10.)

[2]     As the truth of the facts of the crime are not necessary for our resolution of this appeal, we summarize them only for the basis of Contreras's conviction.  (See *People v. Woodell* (1998) 17 Cal.4th 448, 459–460.)  We previously granted the Attorney General's request for judicial notice of the appellate record in Contreras's direct appeal, *People v. Contreras* (Jan. 6, 2000, B113488) [nonpub. opn.] (*Contreras I*).

That evening, Walker, Contreras, Taylor, and a woman named Lisa Garringer arrived at Taylor's home. Around 7:00 p.m., Contreras, Taylor, and Garringer went outside to start the barbecue. Walker stayed in the house. Shortly after 8:00 p.m., Walker came out of the house and walked toward the barbecue to get a plate. As he did, Contreras walked quickly behind Walker and punched him in the back of the head with his fist. While Contreras was hitting Walker, Taylor jumped up, got a machete, and struck Walker on the right side of his neck below his ear. Taylor told Garringer to go in the house. Once inside the house, Garringer heard chopping sounds and Walker screaming in pain. (*Contreras I.*)

Five or ten minutes after the chopping sounds and screaming stopped, Garringer saw Walker's naked body lying near the door. Walker looked dead. Taylor was hosing off the body. Contreras was standing next to him. (*Contreras I.*)

Five or ten minutes after that, Contreras came into the house, got some trash bags from the kitchen, and walked out the back door. Garringer then heard more chopping sounds. A few minutes later she heard some kind of power or electric saw. About 20 minutes later, Contreras and Taylor came back into the house and washed blood off their hands at the kitchen sink. They told Garringer they were going to " 'clean up the mess' " and " 'finish.' " (*Contreras I.*)

Very early the next morning—around 1:20 a.m. on August 10—an army caption was doing surveillance in the Angeles National Forest. A "noticeably loud car" came up the road. (Taylor's girlfriend later told police that Contreras's car was "very loud and 'crappy sounding.' ") When the car came around a bend in the road, the headlights were off. The car

3

stopped, a door opened then slammed shut, and there was movement of some kind between the car and the shoulder of the road. After the car left, the captain "crawled forward from his position" and saw a garbage bag that appeared to have something in it. Later that day—around 9:35 p.m.—a deputy sheriff arrived, opened the bag as well as an inner bag, and found a human head. (*Contreras I.*)

The trash bag contained the upper part of the neck and the legs below the knees as well as the head. Dental records identified the victim as Walker. An autopsy revealed numerous areas of blunt force and sharp force trauma. (*Contreras I.*)

Around the same time—early August 1995—a woman named Lisa Borland "was in the company of Contreras and Taylor." Contreras pulled a wad of bills out of his pocket. When authorities later questioned Garringer about the killing, she told them " 'the whole thing.' " (*Contreras I.*)

## 2. *The charges, trial, verdicts, and sentence*

The People charged Contreras and Taylor with Walker's murder. The People alleged the defendants "intentionally killed the victim while lying in wait, within the meaning of Penal Code Section 190.2(a)(15)." The People also alleged the defendants killed Walker while they were "engaged in the commission of the crime of ROBBERY, within the meaning of Penal Code section 190.2(a)(17)."

Contreras and Taylor were tried separately. The prosecution proposed several theories under which Contreras could be found guilty of first degree murder: willful, deliberate, and premeditated murder; felony murder (with robbery as the underlying felony); and murder by means of lying in wait. The court instructed Contreras's jury with CALJIC Nos. 8.10

4

(Murder–Defined), 8.11 ("Malice Aforethought"–Defined), 8.20 (Deliberate and Premeditated Murder), 8.21 (First Degree Felony–Murder) specifying robbery as the underlying felony,[3] 8.27 (First Degree Felony-Murder–Aider and Abettor) (again, listing robbery as the underlying felony), 8.25 (Murder by Means of Lying in Wait), 8.30 (Unpremeditated Murder of the Second Degree), 8.31 (Second Degree Murder–Killing Resulting from Unlawful Act Dangerous to Life), 8.70 (Dury of Jury as to Degree of Murder), 8.71 (Doubt Whether First or Second Degree Murder), and 8.74 (Unanimous Agreement as to Offense– First or Second Degree Murder).

On aiding and abetting, the court also gave the jury CALJIC Nos. 3.00 (Principals–Defined), 3.01 (Aiding and Abetting–Defined), and 3.02 (Principals–Liability for Natural and Probable Consequences). The court filled in the blanks on CALJIC No. 3.02 to specify the target offense as robbery.

On the special circumstance allegations, the court instructed the jury with CALJIC Nos. 8.80.1 (Special Circumstances–Introductory), 8.81.15 (Special Circumstances– Murder While Lying in Wait), and 8.81.17 (Special Circumstances–Murder in Commission of [Robbery]).

CALJIC No. 8.80.1 stated, "If you find [the] defendant in this case guilty of murder of the first degree, you must then determine if [one or more of] the following special circumstance[s]: [are] true or not true." The court wrote

---

[3]     In connection with the People's felony-murder theory, the court gave the jury CALJIC Nos. 9.40 (Robbery), 9.40.1 (Robbery–Aiding and Abetting–When Intent to Abet Must be Formed), 9.40.2 (Robbery–After Acquired Intent), and 9.41 (Robbery–Fear–Defined).

in the blank: "murder during the commission of a robbery" and "murder while lying in wait." The instruction continued:

> "The People have the burden of proving the truth of a special circumstance. If you have a reasonable doubt as to whether a special circumstance is true, you must find it to be not true. [¶] [If you find that a defendant was not the actual killer of a human being, [or if you are unable to decide whether the defendant was the actual killer or [an aider and abettor],] you cannot find the special circumstance to be true unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill [aided,] [abetted,] [or] [assisted] any actor in the commission of the murder in the first degree, or with reckless indifference to human life and as a major participant, [aided,] [abetted,] [or] [assisted] in the commission of the crime of robbery which resulted in the death of a human being, namely [Fredrick] Walker. [¶] [A defendant acts with reckless indifference to human life when that defendant knows or is aware that [his] acts involve a grave risk of death to an innocent human being.] [¶] [You must decide separately each special circumstance alleged in this case. If you cannot agree as to all of the special circumstances, but can agree as to one, you must make your finding as to the one upon which you do agree.] [¶] In order to find a

6

special circumstance alleged in this case to be true or untrue, you must agree unanimously. [¶] You will state your special finding as to whether this special circumstance is or is not true on the form that will be supplied."

CALJIC No. 8.81.15 instructed the jury that, to find the lying-in-wait special circumstance true, it must find, "1. [t]he defendant intentionally killed the victim, and 2. [t]he murder was committed while the defendant was lying in wait."[4] The instruction went on to define " 'lying in wait.' "

On May 20, 1997, the jury convicted Contreras of the first degree murder of Walker. The jury found true the special circumstance allegations that Contreras "intentionally killed the victim while lying in wait" under section 190.2, subdivision (a)(15), and that he murdered Walker "while in the commission of a robbery."

The court sentenced Contreras to life in prison without the possibility of parole. The sole issue Contreras raised on direct appeal was a contention that the trial court erred in denying his five *Marsden* motions.[5] Another panel of this court affirmed Contreras's conviction. (*Contreras I.*)

**3.    *Contreras's petition for resentencing***

On August 11, 2020, Contreras—representing himself— filed a form petition for resentencing under section 1172.6.

---

[4]    The written jury instruction in the record includes the bracketed words "The" and "A" before the word "defendant." When the court read the instruction to the jury, it used the word "the" rather than "a."

[5]    *People v. Marsden* (1970) 2 Cal.3d 118.

7

Contreras checked boxes on the form stating (1) the information filed in his case "allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine," (2) he was convicted at trial "of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine," and (3) he "could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019." Contreras also checked a box that said he "was convicted of 1st degree felony murder and [he] could not now be convicted because of changes to Penal Code § 189." Contreras checked subboxes stating he "was not the actual killer," he "did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree," and he "was not a major participant in the felony **or** [he] did not act with reckless indifference to human life during the course of the crime or felony." Finally, Contreras checked a box that said, "I request that this court appoint counsel for me during this re-sentencing process." Contreras attached one typed page referring to a 2012 "Evidentiary Hearing" "for Actual Innocence."[6]

---

[6] Contreras seems to have been referring to proceedings before the Honorable Gregory A. Dohi in 2011 and 2012 on a petition for a writ of habeas corpus. Contreras, represented by counsel, petitioned for habeas on several grounds. Judge Dohi found Contreras had not made a prima facie case for ineffective assistance of trial counsel. Judge Dohi issued an order to show cause and conducted an evidentiary hearing on the sole issue of whether Contreras had been convicted based on false testimony. Eleven witnesses testified over eight days. Contreras, Taylor, Garringer, the investigating officers, and others testified. On

8

The trial court appointed counsel for Contreras. About four months later, court-appointed counsel filed a "Declaration of Conflict of Interest and Request to be Relieved as Attorney of Record." Contreras then filed a "Motion to Remove Appointed Counsel Due to Conflict of Interest." The court granted counsel's request to be relieved and appointed another attorney. Some five months later, private counsel—apparently retained by Contreras—substituted in as counsel of record.

Over the next five months or so, counsel filed a series of "amended" replies to the prosecution's response to Contreras's section 1172.6 petition.[7] Counsel presented a number of arguments. Many of these challenged the evidence at trial and raised issues already litigated in Contreras's writ proceedings, including Garringer's recantation some 15 years after the fact of her statements to police and her sworn testimony at Contreras's and Taylor's trials and the alleged ineffectiveness of trial counsel. Counsel asserted "there was actually no evidence of robbery and

January 10, 2012, Judge Dohi denied Contreras's writ petition in a 22-page written order. Contreras then filed a petition for a writ of habeas corpus in this court. Another panel of this court denied that petition on August 29, 2012. In 2017, Contreras (represented by a different attorney) filed "at least his third" writ petition in the superior court. Contreras raised a number of claims, including instructional error at trial and ineffective assistance of counsel. On July 25, 2017, Judge Dohi denied that petition in a written order. Again, Contreras petitioned for a habeas writ in this court, and a panel denied that petition on April 12, 2018.

[7] The record on appeal does not include the prosecution's response to Contreras's petition, which apparently was filed on October 8, 2020.

9

lying in wait," and "[t]here was no evidence at trial that Petitioner had Specific Intent to Kill [*sic*]."  Counsel stated it was still unclear why Taylor killed Walker and "[a]n obvious . . . remedy would be to hold a hearing so the unsettled motive may be finally settled."[8]

Counsel did mention *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). Counsel noted the court had instructed the jury on the natural and probable consequences doctrine with CALJIC No. 3.02.[9] Counsel also mentioned CALJIC No. 8.80.1, but he did not offer any argument based on that instruction.  Counsel referred to "*People v. Smith* (2020)" but provided no citation to that case.

Counsel also attached as an exhibit a transcript of the prosecutor's closing argument at trial, in which the prosecutor said a principal who aids and abets in the commission of a crime is "equally guilty under the law."  The prosecutor also told the jury that "when a person aids and abets in the commission of the crime, the person is not only—who aids and abets is not only guilty of that crime, but he is also guilty of any other crime which is a natural and probable consequence of the crime originally aided and abetted."

---

[8]     Taylor testified at the 2011 evidentiary hearing about his reasons for killing Walker.  Taylor claimed his girlfriend, Cinnamon Meyer, told him Walker had raped her.  Taylor and Walker got into a "heated argument" the night of the barbecue. Taylor then "snapped" and "went 'ballistic,'" killing Walker.

[9]     That instruction, as noted, expressly applied only to the felony (robbery) murder theory, not to the lying-in-wait theory.

10

On May 23, 2022, the prosecution filed a supplemental response to Contreras's petition. The prosecution conceded the felony-murder special circumstance based on the robbery did not "render Petitioner ineligible as a matter of law." However, the prosecution stated, "Because the jury determined Petitioner acted with intent to kill in finding the lying in wait special circumstance true, the jury necessarily found Petitioner had the requisite mental state required for murder under the law as amended by Senate Bills 1437 and 775. Accordingly, Petitioner is ineligible for relief as a matter of law and is not entitled to a hearing pursuant to section 117[2.6], subdivision (d)(3)." The prosecution attached the verdict form.

On June 20, 2022, Contreras filed a reply to the prosecution's supplemental response. The reply asserted, "The jury in finding the Petitioner guilty of § 190.2(a)(17) [*sic*] found that the Petitioner was not the killer, did not act with intent to kill. This verdict contradicts the other special circumstance finding of the Petitioner guilty [*sic*] of lying-in-wait, § 190.2(a)(15)."

On June 22, 2022, counsel appeared before the court. Contreras was not present.[10] The court said it had "reviewed all of the motions" and asked if anyone would like to argue.

---

[10] There is no indication in the record that Contreras's counsel asked the court to order him out from state prison for the hearing. Nor did Contreras's counsel object to proceeding in his client's absence. On appeal, Contreras has not raised any issue about the court proceeding without him being present. (Cf. *People v. Basler* (2022) 80 Cal.App.5th 46, 51, 57–58 [petitioner has constitutional right to be present at evidentiary hearing conducted after order to show cause has issued].)

11

Contreras's counsel said, "[T]he two verdicts were contradictory, one of which advised an intent to kill; the other puts liability resulting from the invalid natural and probable causes [*sic*] doctrine." Counsel didn't mention CALJIC No. 8.80.1.

The prosecutor replied, "[T]here was a true finding on the lying in wait special circumstance. Looking at the specific jury instruction in this particular case, the jury could not make that factual finding without finding the defendant personally acted with intent to kill, which is express malice; therefore, he was ineligible for relief as a matter of law."

After counsel submitted, the court stated, "The court having reviewed all of the motions and the entire file in its entirety, finds that the jury in finding the petitioner/defendant guilty, jury found true the lying in wait special circumstance allegation. They specifically stated, we further find the special circumstance allegation, that the murder of [Fredrick] Walker was committed by the defendant, Edward Contreras, and that the defendant intentionally killed the victim while lying in wait to be true. [¶] The jury found that the defendant acted with the intent to kill." Accordingly, the court denied Contreras's petition for resentencing.

## DISCUSSION

### 1. *Governing law*

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for murder liability and limited the scope of the felony murder rule. (See generally *People v. Reyes* (2023) 14 Cal.5th 981, 986; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 959 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).) Section 188, subdivision (a)(3) now requires proof of malice to

12

convict a principal of murder, except under the revised felony-murder rule in section 189, subdivision (e).  That provision requires the People to prove the defendant was the actual killer (§ 189, subd. (e)(1)); the defendant, though not the actual killer, with the intent to kill assisted in the commission of the murder (§ 189, subd. (e)(2)); or the defendant was a major participant in a felony listed in section 189, subdivision (a), and acted with reckless indifference to human life "as described in subdivision (d) of section 190.2," the felony-murder special circumstance provision.  (§ 189, subd. (e)(3); see *People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*); *Gentile*, at pp. 842–843.)

While the natural and probable consequences doctrine can no longer support a murder conviction, the statutory changes did not alter the law regarding the criminal liability of direct aiders and abettors of murder.  "One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law." (*People v. Offley* (2020) 48 Cal.App.5th 588, 595–596.  See also *Gentile*, *supra*, 10 Cal.5th at p. 848; *People v. Vargas* (2022) 84 Cal.App.5th 943, 953; *People v. Estrada* (2022) 77 Cal.App.5th 941, 945–946 (*Estrada*).)

Senate Bill 1437 also provided an avenue for a person convicted under the former law to petition the sentencing court to vacate his conviction and be resentenced if he could no longer be convicted under the amended law.  (*Strong, supra,* 13 Cal.5th at pp. 708–709; *Lewis*, *supra*, 11 Cal.5th at pp. 959–960.)  Senate Bill No. 775 (2021–2022 Reg. Sess.), effective January 1, 2022, extended resentencing eligibility to individuals convicted of murder on "any theory under which malice is imputed to a

person based solely on that person's participation in a crime." (Stats. 2021, ch. 551.)

If the petitioner makes a prima facie showing of entitlement to relief, the trial court must issue an order to show cause and hold an evidentiary hearing.  At the hearing, the prosecution bears the burden of proving beyond a reasonable doubt that a petitioner is guilty under the amended law. (§ 1172.6, subds. (c), (d)(3); *Strong*, *supra*, 13 Cal.5th at pp. 708–709.)

At the prima facie stage, the trial court takes as true the petitioner's factual allegations and assesses whether the petitioner would be entitled to relief if those allegations were proved.  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  However, "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under section 117[2.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Ibid*.)  The jury instructions and the verdicts are part of the record of conviction.  (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055 [jury instructions]; see *Estrada, supra*, 77 Cal.App.5th at p. 946 [same]; *People v. Harden* (2022) 81 Cal.App.5th 45, 55–56 (*Harden*) [verdict forms].)

We independently review the trial court's determination that Contreras failed to make a prima facie showing.  (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251; *Harden, supra*, 81 Cal.App.5th at p. 52.)

2.   *Contreras is not conclusively ineligible for resentencing as a matter of law*

Contreras raises a number of arguments on appeal. Contreras cites *People v. Maldonado* (2023) 87 Cal.App.5th 1257 (*Maldonado*).  In that case, a jury had convicted the defendant

14

of first degree murder by means of lying in wait. The Court of Appeal held the trial court erred in denying the defendant's later petition for resentencing at the prima facie stage because the jury instructions—CALCRIM Nos. 401 (aiding and abetting), 520 (implied malice), and 521 (lying-in-wait murder)—permitted a conviction based on a theory of imputed malice. (*Maldonado*, at pp. 1259, 1264–1267, 1269.)

Contreras acknowledges the jury instructions for lying in wait as a basis for first degree murder, and those for the special circumstance of lying in wait, are different. The lying-in-wait special circumstance finding requires " ' "an intentional murder." ' " (*People v. Cage* (2015) 62 Cal.4th 256, 278.) This differs from the offense of first degree lying-in-wait murder as set forth in section 189, which does not require that the perpetrator act with an intent to kill. (See *Maldonado, supra,* 87 Cal.App.5th at pp. 1262–1263.) *Maldonado* does not apply here because Contreras's jury found true the special circumstance allegation that he committed the murder by lying in wait. That true finding required the jury to find that Contreras "intentionally killed the victim." (CALJIC No. 8.81.15.)[11]

---

[11] Contreras also contends the "equally guilty" language of CALJIC No. 3.00 is "sufficient at the prima facie stage to demonstrate petitioner could have been convicted under a now impermissible theory permitting the imputation of malice." We disagree. In *People v. Johnson* (2016) 62 Cal.4th 600, our Supreme Court held the same language in former CALCRIM No. 400 did not allow a jury to convict an aider and abettor of first degree murder based on the perpetrator's culpability without considering the aider and abettor's own mental state. (*Johnson,* at pp. 638, 641. Cf. *Estrada, supra,* 77 Cal.App.5th at p. 947.)

15

Contreras makes one argument that has merit, however. The introductory instruction for the special circumstance instructions—CALJIC No. 8.80.1—told the jury that, if it found Contreras was not the actual killer, it still could find a special circumstance true if the People had proved Contreras "with the intent to kill aided, abetted, or assisted any actor in the commission of the murder in the first degree, or[,] *with reckless indifference to human life and as a major participant, aided, abetted, or assisted in the commission of the crime of robbery* which resulted in the death of a human being, namely [Fredrick] Walker." (Brackets omitted, italics added.) This second option regarding intent would seem to apply only to the prosecution's robbery/felony-murder theory. But the court's listing of both special circumstances in the instruction arguably creates an ambiguity.

Of course, the definitions of "major participant" and "reckless indifference" are different now than they were when Contreras was tried in 1997. As our Supreme Court observed in *Strong, supra*, 13 Cal.5th at p. 703, the high court's decisions in *Banks, supra,* 61 Cal.4th 788, and *Clark, supra,* 63 Cal.4th 522, "for the first time provided substantial guidance on the meaning of the two relevant statutory phrases." (*Strong*, at p. 703.)

The Attorney General does not meaningfully respond to Contreras's argument based on the language in CALJIC No. 8.80.1. The Attorney General italicizes the phrase in that instruction that the jury could find true the lying-in-wait special circumstance if Contreras, "with the intent to kill, aided[,] [ ] abetted or assisted any act[or] in the commission of the murder in the first degree." But while the Attorney General also quotes the phrase that follows—"or with reckless indifference to human

16

life and as a major participant, aided, abetted, or assisted in the commission of the crime of robbery"—he does not discuss it.

We recognize that the instruction the jury received on the lying-in-wait special circumstance—CALJIC No. 8.81.15 —required the prosecution to have proved the defendant "intentionally killed the victim." We also recognize the jury found true the allegation that "the murder of Fredrick Walker, was committed by the defendant, Edward Phillip Contreras, and that the defendant intentionally killed the victim while lying in wait."

However, ambiguities like this one—and what to make of a possible inconsistency between or among the jury instructions —cannot be resolved at the prima facie stage. Accordingly, we must reverse the summary denial of Contreras's petition and remand the case for further proceedings.

**DISPOSITION**

We reverse the order summarily denying Edward Phillip Contreras's petition for resentencing and remand the matter. The court is directed to issue an order to show cause and conduct an evidentiary hearing in accordance with section 1172.6, subdivision (d)(3).

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, Acting P. J.

We concur:

ADAMS, J.

BERSHON, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.